And y'all certainly have time to set up, and I certainly am now familiar with your names, having used them in the third case. Ralph G. Evans v. Commissioner of Internal Revenue, and it's 24-11882, 24-11884. And Ms. Hoard, you may proceed when you are ready. Thank you. And I see that you have reserved five minutes for rebuttal. Yes, Your Honor. This case involves a conservation easement. The value of an easement is the difference between the value of the property before the restriction is placed on the property, considering the highest and best use of that property, and the value of the property after the donation of the easement, also considering the highest and best use. This property is interesting because it's not a syndicated easement. It involves two taxpayers. And because the taxpayers own the contiguous property, the contiguous property had to be valued in the before and after analysis, including both an analysis of highest and best use in both times. In determining the value here, the tax court made several errors at law. The first, the tax court erred in ignoring a 2009 sale, indicating a value of approximately $60 million. Since the case law does stress that evidence of a recent sale suggests evidence of value— Are you talking about the Evans sale? Yes, the— It doesn't seem like the district court—I'm sorry, the tax court foresaw it, that the tax court ignored it. I think you might disagree with what it said about it, but that doesn't seem to be something the tax court ignored. Well, we believe that the tax court didn't properly consider the probative value of that sale, considering there is Fifth Circuit authority that's applicable in the old Eleventh Circuit that we cited in the reply brief. It indicates a three-and-a-half-year span should be fine. Maybe the court's rationale might have been different had the sale occurred prior to the recession of 2008, but this was after the recession of the 2008, and the parties stipulated even below the government stipulated in the stipulation of facts that was submitted to the tax court prior to the trial that there was a sale of a half-interest equating to almost $60 million. Right. Sorry, go ahead. But you would acknowledge—certainly we all lived through the Great Recession— that even in 2009, 10, 11, that we're still seeing volatility in real estate prices, correct? Yes, Your Honor. We were seeing volatility, but I don't think you can say every piece of property was volatile. That's like saying, oh, prices dropped 75 percent. But it's a legitimate consideration for the trial court in either the Great Recession or the aftermath or any other period of time just to be looking at price volatility, correct? Well, I suppose the court could consider it. However, I would point out that this sale was after 2009, which was after the Great Recession. It's also after the property was rezoned in 2008. But also—correct me if I'm wrong—this was in 2009. It was a $60 million sale, but your expert is valuing the property in 2011 at $46 million. Is that correct? Yes, Your Honor. So isn't the drop from 2009 to 2011 showing some pretty significant volatility still? It's showing some, and I think the petitioner's experts have accounted for it because we had multiple offers to purchase prior to the crash from national developers, and I think that should be considered in context. When you have a property like this, you're talking about a property that is a development tract. It's surrounded on three sides by significant waterways and on one side by a road that the county had intended to expand. The caseload, though, on offers is not terribly good for you, though, isn't it? As I understand it, speaking of the former Fifth Circuit, we've said that it's well settled that a mere offer unaccepted to buy or sell is inadmissible to establish market value. Well, no, we're not offering it to establish market value. It is a point to consider. We're showing that this property's highest and best use is development, which is the second point I wanted to get to where the court erred below. Nowhere in the court's opinion does the court discuss highest and best use of this property. It's a requirement. Didn't the tax court accept the IRS's expert as credible and accept its valuation? Yes. That wasn't a valuation based on highest and best use of recreation with future development value? Yes, but the case law here from the Eleventh Circuit in Palmer Ranch in Glade Creek says that the court has to undertake the methodology of determining what the highest and best use is. Right, but both parties agreed on highest and best use. This wasn't a disputed issue. Oh, no, no. The parties did not agree on highest and best use. Let me point you to your post-trial brief, and this is at docket entry 55 at page 51. Quote, both petitioners and respondent appraisers agreed that the highest and best use was to hold for development. If the tax court accepted one expert over the other and they both used the same highest and best use, what's the matter if they didn't just say highest and best use is X, now I'm working backwards? In other words, everyone agreed what the highest and best use was. It wasn't in dispute. No, it was in dispute. I beg to differ, and I apologize, but if you would allow me to explain. I will, but make sure you explain your post-trial brief that I just read. Okay. The highest and best use valuation is on a continuum. You know, it's an opinion of value at a point of time. The issue was, is this property going to be developed and at what point? The petitioner's expert said, yes, this property would be developed. They testified it could be near term or within five or six years. They said the property was going to be developed. Mr. Clark, whose valuation was stipulated to in the stipulations, agreed that this property would be developed in parcels, with the Dover Hall parcel being the first parcel to be developed. Here, as I understand, is the highest and best use for each of the experts. Your expert said that the highest and best use was, quote, continuation as recreational managed timber and habitat area with potentially an interim future subsequent development use in concert with a development plan in that there was no immediate demand for development. The services expert testified that the highest and best use was, quote, continued Sylvie culture, which I now have learned what that is. I had to look it up. And recreation, while the property is best held for long-term speculative investment related to possible mixed-use development. Speculative development has a different connotation under the Uniform Standards of Professional Appraisal practice as near-term development. And it's a continuum. You have to decide, is it near-term development or is we're going to speculate? How are those two different? I just read to you both. I took it right from the trial transcript. I realized I had been trying a lot of valuation cases and had to immerse myself in the Uniform Standards. I have more valuation cases this week I've ever had in my whole life, so I've had to immerse myself, too. Well, I'm sorry for you for that. But it is on a continuum. I think even Mr. Clark admitted this whole 5,000-acre tract isn't going to be developed in a day. You're going to develop in parcels, so a developer is going to come in and they're going to develop it based on where can I start development on this property. So if you look at pages 19 and 33 of Document 22, we have illustrations in the brief. It shows the entire tract, and if you look at the entire tract and you see the water frontage so close to Jekyll Island, Sea Island, St. Simons Island, and a resort area of Georgia, when you see the water features of that, you can understand why before the crash national developers were eager to purchase that property. So Mr. Hanley, who the tax court completely ignored, was the local development director for Glynn County. He testified that development was going to be restricted within Highway 99. If you look, I believe, on page 33 of Document 22, you will see the actual easement. You will see Highway 99. You will see a dot going down the length of the easement to the Turtle River. As Mr. Hanley said, development would come in off Highway 99 because Glynn County was determined to keep development within Highway 99. They had a no development zone. Counselor, I promise you, I have pictures of maps. Other than going there myself, I've studied this as closely as can be studied. My question is, how is there a dispute about highest and best use? As you pointed out in the post-trial brief, you being your client, the petitioner and respondent agreed that the highest and best use, the appraisers agreed, was to hold for development. In 2011. Right. But as soon as the markets cleared up, this property was going to be the next property to be developed. It wasn't a speculation that it might be developed. How is that different from your expert, again, the taxpayers' experts, who said it was potentially an interim future, that's a lot of adjectives, interim future, subsequent development, and, quote, there is no immediate demand for development. That was from your expert. In 2011. And my experts also testified development could begin as soon as five years from then. And they valued the property based on that. I would like to point out the court did err in failing to find facts relating to highest and best use. This was a development tract. The evidence was clear from Glenn County. The governor of the state of Georgia had commissioned a study. The legislature of the state of Georgia had commissioned a CID in the property next door. This was a development area as soon as the market improved. There was already development on nearby Jekyll Island, which I believe was nine miles away. Mr. Paulson, Hank Paulson, had purchased property on St. Simons Island. He'd also purchased Little St. Simons Island. The third area where the tax court erred, and I think it's- You have just gone over your time. But you have five minutes for rebuttal. Thank you.  Mr. Klimas. May it please the court, Jeff Klimas for the commissioner. The evidence presented at trial fully supports the tax court's conclusion that the placement of conservation easement, limiting development on 500 acres out of a larger 5,100-acre property, reduced the value of the property by $1 million. I'm going to pick up where I think your opposing counsel was about to start, and that is that there does seem to be a lot of evidence, its value we can talk about, that was not discussed by the tax court. There is a list. I'll go through a partial list of it. Some of it your opposing counsel mentioned, the offers on the property, the listing agreement on the property, the appraisals done by two other appraisers, I think Sigmund and Clark. You have the- and you have Mr. Evans' own lay testimony, to just name a few things. None of that that I just mentioned was mentioned by the tax court. What do we do with that? Mr. Segrano, we would start with the general proposition that a court doesn't have to address every single piece of evidence that's presented at trial. This was a three-day trial. This is a 48-page opinion. There becomes a law of diminishing returns at some point. The court did certainly address what we think are the three most important pieces of evidence or arguments that were made by the parties, the taxpayer's expert in terms of valuation, the commissioner's expert in terms of valuation, and discussing at length the sale of the half interest in the partnership over two and a half years prior and giving- The only reason it matters is that because I agree with you. So credited the services expert, discredited the taxpayer's expert, at least one of them. But there is this other evidence that goes to valuation that's unmentioned, and how do we weigh that? Yes, Your Honor. So we think that just on its face, a lot of this evidence is not admissible as to value, and we think that the court's rulings on certain issues encompass some of this other evidence, just the logic and persuasive value of the court's rulings on other issues. So we take, for example, the appraisal by Claude Clark. Mr. Clark was called as a witness to testify at trial, and the court excluded him as a witness because it said you did not timely submit an expert report that was compliant with the tax court's rules. It said his expert report was admissible as to a reasonable cause defense, was admissible as to whether or not there was a qualified appraisal done, which is a check-the-box requirement that if you don't have a qualified appraisal attached to your tax return, you cannot have, your deduction cannot be allowed if you're claiming a deduction in excess of $500,000. This is Code Section 170, 26 U.S.C. 170 F11. There's a, and specifically E, little i, which talks about what a qualified appraisal is, and this is a check-the-box requirement. So, yes, there was a qualified appraisal, and his appraisal comes into evidence to show that there was a qualified appraisal in conformance with Section 170 of the Internal Remedy Code. It comes into evidence for the proposition that they, to support potentially a reasonable cause defense to penalties. What was the taxpayer's good faith investigation into the amount of the deduction that was being claimed? But the court said we will not allow him to testify and put into evidence an opinion as to valuation. His report does not come into evidence. All right, that excludes the Clark report. What about Sigmund? The same logic would apply to Mr. Sigmund's report, and we would say even more so because unlike Mr. Clark, who they at least tried to call as a witness, Mr. Sigmund was not listed on the witness list. They did not try to call him at trial, and for that reason, his report, again, could come into evidence for potentially a reasonable cause defense, but it's not going to come into evidence for a substantive opinion on valuation. Wasn't there a more explicit ruling with regard to Mr. Sigmund in the record? And I'm looking at appellate docket entries, so our big appendix, 17-6 at 435.36. It was trial transcript pages 104, 105. I thought there there's an explicit ruling by the tax court that Sigmund's report was only admissible for state of mind for the defense on penalties and not for market value and that it was not allowed to be offered for the truth of the matter asserted. Was that not explicitly ruled? I missed that when I was going through the transcript. I apologize. But, yes, we think that tracks with the ruling on Mr. Clark, and certainly to the extent that the court actually acknowledges that, we think it's consistent with the rules of evidence and consistent with the ruling on Mr. Clark. All right. What about the other categories? Sure. Mr. Carter's opinion as to value. So he's talking about his opinion as to value as of 2009. The court talks about why it doesn't believe that the prior sale in 2009 is probative or it's entitled to little or no relevance. This is at page 46 of the opinion. And so if a prior sale in 2009 is not going to be considered to have much of any probative value, then certainly Mr. Carter's own opinion of value as of 2009 is going to fall into a similar category. We also would note that we think that he's essentially trying to bootstrap in the opinion of Mr. Sigmund. Are we allowed to do that? In other words, so the question before us is what? Is it that the district or the tax court's evaluation was clearly erroneous or not? And if that's the case, what is our analysis? Or are we asking was it error not to both consider these other pieces of evidence and at least assign some weight to them so that we could understand how they were valued? What exactly are we reviewing? Well, the ultimate determination is the court is a clear error standard as to the evaluation, as to the number of the tax court breach.  Yes, we think it's a clear error standard as to that. There are these subsidiary issues in terms of what the court considered and how it considered that evidence, but we think it ultimately comes down to clear error in terms of how much weight to afford to different pieces of evidence. The reason I ask is are we allowed to sort of—I think you're probably right. The logic applies, right? If the Evans purchase was not valued by the court and didn't explain why, then certainly his lay opinion about value around the same time would fall within the same category. That makes sense to me, but I'm speculating. I'm not the tax court. I didn't hear it, and I don't know. And so it's one thing. I agree with you that the tax court isn't required to sort of list all the evidence that he or she considered, but it's another thing for me as the reviewing court to then sort of put reasons in its mouth for why it disregarded pieces of evidence. Where's sort of the line for an appellate court reviewing where there's silence from the tax court? We think that there could be instances in which maybe the tax court doesn't do enough in terms of articulating its rationale that it could require remand for that type of consideration. We think here the logic that it applied, for example, to the 2009 sale, is directly applicable to Mr. Carter's 2009 valuation. The ruling that the court had about Mr. Sigmund's valuations not coming into evidence for their substantive opinion as to valuation. Mr. Carter says that he took Mr. Sigmund's valuation and subtracted $5 million to discount for lack of control because Mr. Carter had more rights to control the partnership than Mr. Evans did. But if what he's doing is taking Mr. Sigmund's valuation and then working backwards, then what we are doing is introducing through the back door the valuation that the court said was not admissible to the front, and Judge Posner in Cunningham talks about how you can't do that. You can't use one witness to get in through the back door an expert opinion that was not admissible to the front. What about the offers? So we think that, first of all, applying the same logic, if the events of 2009 were not instructive as to the value in December of 2011, we think certainly events that happened in 2005 and 2006 would be even less instructive. There were giant differences in the market, right? In 2005 in Glynn County, there were 800 building permits issued for single-family homes. In 2009, there were 127, and that continues to fall in 2010 and 2011 to 76 and 72. The market has tanked. And so these offers are not instructive as to the value at the relevant time period. We're not talking about a market that was relatively flat. We're talking about a market that was tumultuous and had been marked by giant swings in value. And so when the court says, hey, the events of April 2009 are too remote for me to consider, we think that applies even more strongly to what happened in 2005 and 2006. But then there's a secondary point, which is that these offers of value, these offers to purchase are hearsay, that that's what the Fifth Circuit said in Smith, that they're not admissible to determine value because an offer that doesn't actually get consummated is not evidence of value. And so we think whether you use the court's logical conclusion about the timeframe that was relevant or whether you apply the rules of evidence, you get to the same conclusion that these pieces of evidence didn't have to be considered, and the court's ultimate finding was not clearly erroneous for that reason. So it is a little unusual to have a tax court opinion where we need to determine highest and best use, and the term highest and best use does not appear in the tax court opinion. And I understand that you are your position as well. The tax court accepted the IRS expert. The IRS expert discussed highest and best use, so it was necessarily implicit in the tax court opinion. Why wouldn't we just send it back and have the tax court examine highest and best use as it should have done? So, Your Honor, we would make two points, the first of which is this isn't a case like White House Hotel, where the Fifth Circuit said, look, it's ambiguous as to what the court was actually doing because it didn't accept the report, the expert evaluation offered by the commissioner, and it didn't accept the evaluation report proposed by the taxpayer. It said, neither one of these is right. I'm going to come up with my own number. And the court said, well, there's ambiguity as to what is actually the highest and best use on the factual record here. Is it to build a non-luxury hotel? Is it to do something else? It said there was this ambiguity, and it said we need to have the tax court resolve that ambiguity and tell us what it meant. This is a different situation because here the tax court actually adopts evaluation of one of the parties, which necessarily, we would say, includes a subsidiary finding of highest and best use on which that report and that evaluation rely. But even more so, as Judge Luck pointed out, there's really not any daylight between what the parties thought about the highest and best use. They both agreed that there was no immediate demand for development. They both agreed that the best use of this property would be development, mixed-use development, when there was such demand. So there really wasn't a dispute for the court to resolve because the parties were basically in agreement as to the highest and best use. So even if we were to say, well, we don't know if the court explicitly adopted the highest and best use that was proffered by the government's expert, Mr. Ryan, we think that certainly the court was not required to make a finding when there was no dispute as to this issue. If there are no further questions, then we would ask for the tax court's decision to be affirmed. Thank you. Thank you. Ms. Hoard, you have five minutes. Thank you. Judge Luck had asked about the standard of review on appeal. With respect to the methodology the tax court employed, that's an error of law. And they missed in three areas the sale. They neglected to make findings on highest and best use. And finally, they used Mr. Ryan's distressed sales, which he did not fully disclose in his report, were distressed sales. And the Supreme Court and Resolution Trust Corporation has said those sales are not fair market value sales. He didn't even make adjustments for the fact that all four of them were distressed sales. So his report is basically worthless in that regard. As for reviewing Mr. Ryan's credibility, this court does not have to give deference to the trial court with regard to credibility assertions when the extrinsic evidence suggests that there's an error that has been made or when those findings of fact are based on errors of law. And we believe the findings of fact that the judge made in this case are based on the three errors of law, failing to consider the best evidence, a recent sale of the exact same property, which indicates Mr. Ryan is not correct that all properties were valueless. We know this one wasn't. The findings of fact that were based on distressed sales and the findings of fact that were not based on his specific findings of highest and best use. Furthermore, there was extensive extrinsic evidence that would make it where this court does not have to accept the credibility determination of the lower court. In fact, the only person the lower court believed was Mr. Ryan who used distressed sales and only used distressed sales. Other appraisers were able to find fair market value sales, but not Mr. Ryan. The court ignored extrinsic evidence that Mr. Carter purchased the property for $30 million. The court ignored stipulations in the record. The parties had stipulated to the facts. The court completely ignored the prior sale in 2009. You've mentioned the distressed sales now I think three times. It's not something we talked about earlier, but what do we do with the testimony of the expert, which the tax court credited, that he, quote, confirmed with the parties involved that the properties had been received, their full exposure to the market, and had achieved prices that were consistent with everything they could have achieved under prevailing market conditions? Well, if you're a distressed seller and you're desperate, yeah, you pretty much receive the best you can get under the circumstances. I would like to point out that was not in his expert report. I understand. That's the testimony that was accepted, and you haven't disputed that that was error to admit that testimony. I don't even see it was objected to looking at the transcript, that part of the testimony. But I guess the question is, isn't the tax court able in making the credibility determination to look at your good points, you've raised great points, and the great points that were mentioned by him, which is I actually talked to the property owners, and none of them sold under those conditions. And so the tax court has something on one hand, something on the other, and makes a call. How are we able to overturn that? With all due respect, I don't believe that Mr. Ryan testified that he talked to the property owners. He says he talked to another realtor. He says it confirmed with the parties involved that the properties had received their full exposure. That would be the realtors. And I believe in one situation in the brief, and I'd have to check, I believe even the government admitted that Mr. Ryan said the appraiser was not aware that in sale number one, the Reynolds family was in receivership. At the time they were selling that property, they were having liquidated assets. Right. Again, you brought up some great points. But the expert also said, I've considered this, and I don't think that affected the price. And so he made the call, and the judge heard both and made a decision. But I think this court doesn't have to give deference to the judge considering all the extrinsic evidence that shows that the court erred in relying on four distressed sales. The problem is, in criminal cases, this comes up with sufficiency of the evidence review. We've said it's sufficient evidence to convict someone of a felony based solely on cooperator testimony without anything else that's involved with it. In other words, the testimony of one person weighed against lots of other evidence is sufficient to have someone serve a sentence for the rest of their lives. Certainly that's enough for a tax court judge to make a valuation determination, is it not? No, I would say not in this— Not even with an expert? No, not in this situation. Not when the expert intentionally uses distressed sales when there are some non-distressed sales out there. And even if you look at his after value, how he determines that the market dropped 75% in his appraisal, he uses distressed sales for all of that to show it was a 75% drop. The only sale he used that wasn't distressed, the before and after sale after the market dropped, was less than 15%. So he intentionally picked distressed sales to come up with a low number. You can't ignore the fact that this is a unique property. He used timber tracks with no water influence, no access to a resort area of Georgia. But the statement, intentionally picking distressed sales, we are in, at the time, the 2009 to 2011 period, we are in a time filled with distressed sales. So how does that factor into what you just said about the expert? I apologize for interrupting. One of our appraisers used a distressed sale. But he made an upward adjustment to show that it occurred in a distressed market or it occurred because it was a distressed sale. And that is what a competent appraiser does, is they fully disclose the nature of the sale and they make adjustments to show that it is a distressed sale. Here, it would never have been in this record had the petitioners, the taxpayers, not found the documentary evidence that all of these sales were distressed and produced it and got it into the stipulation on the day of trial. Otherwise, the court never would have known the nature of these sales. All right, thank you. Thank you both. We have your case under submission, and we are in recess until tomorrow morning.